# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ST. PAUL FIRE AND MARINE ) | |
| INSURANCE CO., et al., ) | |
| ) | |
|     Plaintiffs/Counterclaim ) | |
|     Defendants, ) | Case No.:  2:11-cv-02695-JEO |
| ) | |
| v. ) | |
| ) | |
| DRUMMOND COMPANY, INC., ) | |
| ) | |
|     Defendant/Counterclaim ) | |
|     Plaintiff. ) | |

## **MEMORANDUM OPINION**

    This case is before the court on Plaintiffs/Counterclaim Defendants'[1] Motion to Dismiss and/or strike certain counterclaims under FED. R. CIV. P. 12(b)(6) and 12(f), filed on October 31, 2011.  (Doc. 6).[2]  Plaintiffs[3] move to dismiss Defendant's Counterclaims Two, Three, Eight, Nine, Eleven, and part of Five for failure to state a claim upon which relief can be granted. Further Plaintiffs move to strike Defendant's Counterclaims Four, Six, Seven, Eight, Nine, and Ten.  The parties have been afforded an opportunity to brief the relevant issues.  Upon consideration, the undersigned hereby finds that the motion to dismiss is due to be granted in part and denied in part and the motion to strike is due to be denied.

---

    [1] Plaintiffs to this litigation are St. Paul Fire and Marine Insurance Company, individually and as successor by merger to The St. Paul Insurance Company of Illinois and St. Paul Mercury Indemnity Company, Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company, and United States Fidelity and Guaranty Company.  (Doc. 3 at 13-14).

    [2] All references to "Doc.____" refer to the document numbers assigned by the Clerk of the Court.

    [3] For clarity and ease the Court will refer to Plaintiffs/Counterclaim Defendants (St. Paul Fire and Marine Insurance Company, Travelers Casualty and Surety Company, and United States Fidelity and Guaranty Company) as "Plaintiffs" and Defendant/Counterclaim Plaintiff (Drummond) as "Defendant" or "Drummond."

I.      **FACTS AND PROCEDURAL HISTORY**[4]

Drummond Company, Inc., individually and as successor in interest to Alabama By-Products Company ("Drummond"), is an corporation organized under the laws of the State of Alabama. (Doc. 3 at 13). Drummond maintained liability insurance coverage with Plaintiffs continuously from 1944 through 1986. (*Id.* at 15).

Drummond has owned and operated a coke plant in Tarrant, Alabama from 1920 to the present. (*Id*. at 15). On August 16, 2006, attorneys from the Environmental Litigation Group, P.C. ("ELG") approached Drummond, as well as other industrial operators, requesting settlement for approximately 4,000 residents of the Tarrant and North Birmingham areas. ELG offered an unfiled, but potential complaint, that asserted various personal injury and property damage claims caused by the industrial emissions of the coke plant. (*Id.* at 18).

On August 22, 2006, Drummond provided notice of these claims to Plaintiffs, receipt of which was acknowledged in a letter dated September 5, 2006. (*Id*. at 18-19). Plaintiffs instructed Drummond to protect its own interests and to forward any ensuing complaint, but disclosed no position on defense or indemnity coverage. (*Id*. at 19). Drummond engaged legal counsel and determined that it wished to defend against the claims of ELG's clients. (*Id*. at 19). On June 25, 2006, ELG filed 22 complaints against Drummond on behalf of its clients,

---

[4]Because this action is before the court on a motion to dismiss, the facts set forth in the Counterclaim "are to be accepted as true and the courts limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Therefore, the following facts are those set forth in the Counterclaims.

Drummond provided notice of these filings to Plaintiffs on September 5, 2008.[5]  (*Id*. at 19).[6]

In a letter dated December 9, 2008, Plaintiffs stated "that we will participate, subject to the reservation of rights below, in Drummond's defense of these matters under the GL policies in effect from June 1, 1981 to June 1, 1985," Plaintiffs also stated that they would "contribute to the payment of reasonable and necessary fees for defense-related work." (*Id*. at 21).  On December 14, 2009, Plaintiffs wrote to Drummond requesting additional information and again confirmed their previous assertion to contribute "reasonable and necessary" defense costs. (*Id*. at 22).  No further written communication between Drummond and Plaintiffs occurred until February, 4, 2011, when Drummond provided a litigation update and informed Plaintiffs that the first trial group was scheduled for trial on June 13, 2011. (*Id*. at 22).  In a letter dated March 11, 2011, Plaintiffs informed Drummond of their position regarding what percentage of the defense costs it felt it was obligated to contributed for the first time.[7]  (*Id*. at 23).

Drummond states that from the first time it notified Plaintiffs of the potential claims until the first day of mediation (August 2006-March 24, 2011), Plaintiffs did not "hire any consultant or other expert to investigate the claims made in the Underlying Lawsuits or the extent of [Plaintiffs'] indemnity obligations. (*Id*. at 20 & 24).  For the same period Drummond states that Plaintiffs "did not send any of its own employees or representatives to the ABC Coke Plant to investigate the claims made in the Underlying Lawsuits or the extent of [Plaintiffs'] indemnity

---

[5]Three addition complaints were filed in November 2008, April 2009, and October 2009.  These complaints were identical to the previous complaints and only added additional plaintiffs.  (*Id*. at 23).

[6]*Mamie L. Williams, et al. v. Drummond Company Inc*., Circuit Court of Jefferson County, Alabama, CV 200802070) (hereafter "Underlying Lawsuit").

[7]Plaintiffs provided only a percentage and not a define dollar amount in regard to its believe contribution to defense.  (Doc. 3 at ¶ 60).

3

obligations." (*Id*. at 20 & 25).  Drummond also claims that Plaintiffs "did not contact, or research publicly available information from, the Environmental Protection Agency, the Jefferson County Department of Health, or any other environmental regulatory agency to investigate the claims made in the Underlying Lawsuits or the extent of [Plaintiffs'] indemnity obligations." (*Id*. at 20-21 & 25).  Drummond also claims that Plaintiffs "did not conduct any independent research of the ABC Coke Plant or the claims made in the Underlying Lawsuits, other than to ask Drummond for information which Drummond might possess or develop." (*Id*. at 21 & 25).

Prior to settlement, Plaintiffs stated that they would only offer money towards settlement if Drummond provided Plaintiffs with a release from all claims made in the litigation, as well as any future claims related to the Alabama By-products Coke Plant site.  (*Id*. at 26).  Plaintiffs offered Drummond a sum certain to satisfy Plaintiffs' defense and indemnity obligations that was far less than Drummond's defense costs to date.  (*Id*. at 26).  Mediation began on March 24, 2011, and ended on March 25, 2011.[8]

At a meeting during the mediation process, Drummond asked Plaintiffs to disclose the amount of attorney fees Plaintiffs would pay. (*Id*.)  Plaintiffs continually stated that bills were still under review and that they did not know the amount that they would pay for defense costs. (*Id*.)  Drummond avers that this representation was untrue and that Plaintiffs "ha[ve] a pattern and practice of coercing its insured into surrendering their policies or the practical equivalent thereof: providing site releases for all present and future claims." (*Id*.)

---

[8]Drummond negotiated settlement of all but one of the claims against it, using its own funds.  These settlements are within policy limits.  (Doc. 3 at ¶ 77).

In its prayer for relief, Defendants seek payment in the full amount of the claims submitted to Plaintiffs. Defendant seeks general, compensatory, and punitive damages as well as interest, costs and attorney's fees incurred in pursuing this litigation. Plaintiffs moved to dismiss counterclaims Two, Three, Eight, Nine, Eleven and part of Five pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b). (Doc. 6). Plaintiffs also moved to strike Defendant's Counterclaims Four, Six, Seven, Eight, Nine, and Ten pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(f). (*Id.*)

## II.   MOTION TO DISMISS

### A.   STANDARD OF REVIEW

Under FEDERAL RULE OF CIVIL PROCEDURE 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 129 S. Ct. at 1949 (internal citations and quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citing *Twombly*, 550 U.S. at 557).

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citations and quotation marks omitted). A

complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

    B.  ANALYSIS

        1. **Counterclaim Two (Enhanced Obligation of Good Faith**)

In Counterclaim Two, Drummond asserts a claim for a breach of the enhanced obligation of good faith. (Doc. 3 at 28).  Counterclaim Two suggests that "once an insurer reserves its rights and defenses under the policy, the insurer has an enhanced obligation of good faith."  (Doc. 3 at 28).  However, Plaintiffs argues that Drummond has not stated facts sufficient to support such a claim.

Under Alabama law an insurer must take control of the lawsuit before an enhanced obligation of good faith will attach. *Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc.*, 814 So. 2d 191, 195 (Ala. 2001).  An insurer is in control when it is "controlling the investigation, the defense of the lawsuit, and settlement negotiations." *Id*.  Here, Drummond does not allege that Plaintiffs assumed control of the Underlying Lawsuits.  Rather, Drummond's factual pleadings lead to the opposite conclusion: that Drummond was in control of the litigation.

Drummond argues Plaintiffs did not conduct any independent investigation as to the Underlying Lawsuit, (Doc. 3 at 20-21 & 24-25; Doc. 9 at 4); that Drummond was responsible for

6

"vigorously defend[ing] the case," (Doc. 3 at 22); and that it, not Plaintiffs, "negotiated the settlement demand." (*Id*. at 27; Doc. 9 at 5). Drummond fails to allege facts to support a finding that an enhanced duty of good faith to attached to the Plaintiffs. To the extent Drummond argues this enhanced obligation attached solely because Plaintiffs were acting under a reservation of rights, this Court is unpersuaded. Drummond cites no case law to support this contention and the Alabama cases addressing this issue lead to the opposite conclusion. *See Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc.*, 814 So. 2d at 195. Thus, Counterclaim Two is due to be dismissed for failure to state a claim upon which relief can be granted.

### 2. Counterclaim Three (Breach of Fiduciary Duty)

A fiduciary duty exists when:

> one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

*K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671 (Ala. 1992). Further, "[t]he Alabama Supreme Court has expressly declined to find a fiduciary relationship between insurance companies such as Defendant and their customers in the context of the purchase of casualty, health, or life insurance and attempts to collect under those policies." *Sayer v. Lincoln Nat. Life Ins. Co.*, 7:05-CV-1423-RDP, 2006 WL 6253201 (N.D. Ala. Oct. 12, 2006). While the relevant

insurance policies here are not casualty, health, or life insurance, the underlying rationale can be applied.  A fiduciary relationship does not exist simply by virtue of a contract between the insurer and the insured.  *Reeves v. State Farm & Cas. Co.*, 539 So. 2d 252, 256 (Ala. 1989).  Rather, a fiduciary relationship can be created when the insurer suggests to the insured that it will "take care of" the matter, causing the insured to place its confidence in the insurer.  *State Farm Mut. Auto. Ins. Co. v. Ling*, 348 So. 2d 472, 476 (Ala. 1977).

Drummond has not pleaded any facts stating that such a situation existed.  It does not assert that Plaintiffs operated under anything other than a reservation of rights.  It does not allege that Plaintiffs occupied the position of an advisor or counselor.  Nor has Drummond pleaded that there was unequal bargaining power between Plaintiffs and itself.  Absent more than just an allegation of a contractual relationship, the Defendant cannot show that a fiduciary duty existed between the parties.

However, Drummond argues that a "fiduciary duty or confidential relationship arose because Drummond placed special trust and confidence in [Plaintiffs] to provide insurance for the purpose contemplated and the premium paid by Drummond."  (Doc. 3 at 29).  This logic is circular and attempts to create a fiduciary duty based solely upon the insured/insurer relationship.  As stated above, this cannot be done under Alabama law.  For this reason, Drummond has not met the pleading standard as required under FEDERAL RULE OF CIVIL PROCEDURE 12(b).  Accordingly Counterclaim Three is due to be dismissed for failure to state a claim upon which relief can be granted.

    **3. Counterclaim Five (Bad Faith), Eight (Fraudulent Misrepresentation), and Nine (Suppression)**

  Plaintiffs also moved to dismiss Counterclaims Eight and Nine and part of Counterclaim Five on the basis that the facts, as alleged in the Complaint, show that Plaintiffs had disclosed its coverage position to Defendant. In other words, Plaintiffs argue that based on the language in the communications between it and Drummond, Drummond was aware that it had constructively denied the claim and, thus, those Counterclaims based on the allegations that Plaintiffs wrongly withheld its coverage position are due to be dismissed. In support of this, Plaintiffs rely heavily on *Blackburn v. Fidelity and Deposit Co. of Maryland*, 667 So. 2d 661 (Ala. 1995). In *Blackburn*, the Alabama Supreme Court found that the plaintiff in an insurance dispute did not offer sufficient evidence of fraudulent suppression to survive summary judgment where the evidence showed that while the insurer had not explicitly denied coverage, it had indicated there was no coverage in its letters to the insured and filed a declaratory judgment action seeking a judicial determination there was no coverage. *Id.* at 673 (pointing specifically to a letter from the insurer that stated that the alleged actions appeared to fall within an exception to coverage and the fact that the insurer had filed a declaratory judgment action relatively early in the ongoing dispute).

  On its face, *Blackburn* is distinguishable from the current case before the court. First, *Blackburn* was decided on summary judgment where the parties had the benefit of discovery and the court had the benefit of seeing the actual communications between the parties. Here, the court is limited to the allegations contained in the complaint, which are decidedly less decisive on the issue of whether the claim was denied than was the case in *Blackburn*. Here, Defendant

9

alleges that after notice of a potential claim in August 2006, Plaintiffs instructed Drummond "to protect its own interests and to forward a complaint if one was ever served." (Doc. 3 at 18-19). When that happened in September 2008, Plaintiffs requested more information and then in December 2008 stated that "it has 'determined that we will participate, subject to a reservation of rights noted below, in Drummond's defense of these matters' ... and that it would 'contribute to the payment of reasonable and necessary fees for defense-related work.'" (*Id.* at 20-21). In December 2009, Drummond again requested more information and confirmed that it would contribute to reasonable and necessary defense costs. (*Id.* at 22). Plaintiffs sent no further written communication to Defendant until February 2011 and in March 2011, Plaintiffs told Defendant it would not offer any money towards the settlement of the litigation unless Drummond provided Plaintiffs with a release from all claims made in the litigation, as well as from any future claims related to the coke plant. (*Id.* at 22-26). Plaintiffs filed the current declaratory judgment action, which clearly shows its coverage position, in July 2011, almost five years after it was first notified of a potential claim.

As shown above, the communications from Plaintiffs to defendant, as alleged in the complaint, do not clearly show that Plaintiffs had denied the claim. Accordingly, this court cannot say that, as a matter of law, defendant had notice of Plaintiffs' coverage position. Thus, Plaintiffs' Motion to Dismiss is due to be denied as to Counterclaims Five, Eight, and Nine.

### 4.     Counterclaim Eleven - Conspiracy

Plaintiffs argue that Counterclaim Eleven is due to be dismissed because there is no actionable tort underlying the conspiracy claim. (Doc. 7 at 10). However, because Counterclaims Five, Eight and Nine are not due to be dismissed, there are multiple torts upon

which the conspiracy claim may rest. For this reason, Plaintiffs' Motion to Dismiss Counterclaim Eleven is due to be denied.

**III. MOTION TO STRIKE**

Rule 12(f) states "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Plaintiffs request that this court strike the redundant allegations and claims from Drummond's Counterclaims. (Doc. 7 at 15). Specifically, Plaintiffs argue that counts Four, Six, Seven, Eight, Nine, and Ten should be stricken because they are all duplicative of defendant's bad faith claim (Counterclaim Five). However, "[t]he fact that the claims may have arisen out of the same set of facts does not prevent them from being multiple claims." *Pate v Merchants Nat. Bank of Mobile*, 409 So. 2d 797, 799 (Ala. 1982). To show that the claims are not redundant, Drummond need only show that each of the claims forms a separate basis for liability.

Counterclaim Four alleges negligence and wantonness in Plaintiffs' investigating or failure to investigate the insurance claim. Negligence and bad faith are recognized as separate and distinct counts in Alabama. *Waters v. American Cas. Co of Reading, Pa.*, 73 So. 2d 524, 528 (Ala. 1953).

Counterclaim Six alleges "abnormal" bad faith. (Doc. 3 at 32). Abnormal bad faith is separate and distinct tort from "normal" bad faith. It has its own standard that has to be met and is a separate means of relief from normal bad faith. *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 37 (Ala. 2008).

Counterclaim Seven alleges that Plaintiffs anticipatorily repudiated its obligations under

the Policies. This sounds in contract as a breach thereof and is its own cause of action. *New York Life Ins. Co. v. Viglas*, 297 U.S. 672 (1936).

Counterclaim Eight is misrepresentation and Counterclaim Nine is suppression. Misrepresentation was recognized as a distinct tort in *Boswell,* 643 So. 2d 580; while suppression was recognized as such in *Blackburn*, 667 So. 2d 661.

Counterclaim Ten alleges the tort of outrage. The torts of outrage and bad faith are also separate torts. *Nabors v. St. Paul Ins. Co.*, 489 So. 2d 573, 574 (Ala. 1986). Because all of the claims that Plaintiffs seeks to strike are separate claims upon which recovery can be granted, the Motion to Strike is due to be denied.

## IV.   CONCLUSION

Based on the foregoing, the court finds that Plaintiffs/Counterclaim Defendants' Motion to Dismiss (doc. 6) is due to be granted in part and denied in part and that Plaintiffs/Counterclaim Defendants' Motion to Strike is due to be denied. Specifically, only Counterclaims Two and Three are due to be dismissed. A separate order will be entered.

**DONE** this 5th day of April, 2012.

_John E. Ott_
**JOHN E. OTT**
United States Magistrate Judge